**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

**CASE NO.: 15-60474-CIV-COHN/SELTZER**

| | |
|---|---|
| **GARY DEAR,** | ) |
| **As Class Representative of** | ) |
| **Those Similarly Situated,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **Q CLUB HOTEL, LLC, a Delaware** | ) |
| **Limited Liability Company,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | / |

## DEFENDANT'S, Q CLUB HOTEL, LLC, MOTION FOR TAXABLE COSTS

Pursuant to Local Rule 7.3(c), Defendant, Q CLUB HOTEL, LLC ("Q Club"), by and through undersigned counsel, hereby submits this memorandum in support of the Bill of Costs filed by Q Club.

## I. BACKGROUND

The Q Club Resort and Residences Condominium (the "Condominium") was formed in late 2006 via the Declaration of Q Club Resort and Residences Condominium (the "Declaration"). *See* Pl.'s Ex. 48.[1] Q Club owns and operates the Hotel Unit as a traditional resort style hotel. The Plaintiff, Gary Dear ("Plaintiff"), and the class members (the "Class Members") are owners of the majority of the Residential Units in the Condominium. The Residential Unit owners have the option to place their units into the Hilton Hotel Rental Management Program, which option has been exercised by a majority of the residential unit

---

[1] Unless otherwise noted, capitalized terms used herein correspond to the same terms used in the Declaration.

owners. As part of that program, the Residential Unit owners permit Hilton Hotels Corporation ("Hilton") to maintain a portion of room revenues in a reserve account.

In the Declaration, Q Club agreed to repair, replace, improve, maintain, manage, operate and insure the Shared Components, which were deemed to be a part of the Hotel Unit. *Id.* at ¶ 2.34. The Shared Components comprise, in essence, the entire Condominium building (save for the Commercial Units and Residential Units themselves).[2] The only areas excluded from the Shared Components are food and beverage operations, retail areas not contained within the Commercial Units, meeting/conference rooms and ballrooms. *Id.*

In exchange for Q Club's undertaking responsibilities for the Hotel Unit and the Shared Components therein, the owners of the Residential Units and the Commercial Units agreed to pay to Q Club annually 40.4967% of the Shared Costs. *Id.* at ¶ 12.3(a). Each Residential and Commercial Unit owner was assigned a "proportionate share" of the Hotel Shared Costs (which was set forth on an attachment to the Declaration). *Id. See* Ex. 7 to Declaration.

The Hotel Unit commenced operations in 2007 as the "Hilton Fort Lauderdale Beach Resort" and is managed by Hilton. Prior to the commencement of operations at the Hotel Unit, Q Club and Hilton identified certain expense items relating to the maintenance, management, and operation of the Shared Components and which therefore constituted Shared Costs. Thereafter, each month, 40.4967% of those identified expense items were charged to "Department 30", a designation within Hilton's accounting software. Through 2012, Q Club and Hilton used the foregoing methodology to account for the Shared Costs which were to be passed on to the Unit Owners.

---

[2] The Condominium was established in such a manner so as to minimize the Common Elements. Most components which typically would be considered the common elements of a condominium are instead designated as part of the Shared Components of the Hotel Unit. Pl.'s Ex. 48, Declaration, at ¶ 2.13.

In 2012, Q Club and Hilton, in collaboration, reevaluated the entries which comprised Department 30 and determined that various expense items should have been included in the category of Shared Costs (and therefore charged as Department 30 expenses) because they related to maintenance, operation and management of the Shared Components; however, Hilton had not been including them as such. As a result, Q Club had been bearing significantly more than 60% of the Shared Costs since operations began in 2007. Beginning in 2013, Q Club began to include the newly identified expense items as Shared Costs pursuant to a different accounting methodology. May 26, 2017 Trial Tr. at 137, 142.  As a result, the amounts billed to Plaintiff and the class members for Shared Costs increased in 2013.

Plaintiff, on behalf of a class which was subsequently certified, filed his Complaint on February 18, 2015.  [D.E. 1-1 at pp. 2-23].  The Complaint contained two counts: one for breach of contract and one for declaratory and injunctive relief. Plaintiff's principal breach of contract allegation was that Q Club "breached the Declaration by over-charging and collecting from Residential Unit Owners…for Shared Costs as defined by the Declaration. In addition, Q Club has charged and collected from them for costs incurred by the Q Club as the Hotel Unit Owner that are not Shared Costs or defined by the Declaration."  Compl. at ¶¶ 64-67.  Plaintiff's declaratory judgment and injunctive relief count was essentially duplicative of its contract count. *Id.* at ¶¶ 71-80.  Plaintiff did not allege that Hilton had breached any obligations to him or the class or include any allegations relating to the reserve accounts funded pursuant to the Hilton rental management program.

Q Club removed the case to this Court on March 9, 2015.  [D.E. 1].  Q Club moved to dismiss Count II of the Complaint on March 27, 2015, [D.E. 10], and that motion was granted on July 14, 2015.  [D.E. 21].  Discovery took place over the course of approximately the next year

and three months; Plaintiff issued written discovery requests and deposed six (6) witnesses. Plaintiff disclosed its expert on October 18, 2016. Q Club disclosed two rebuttal expert witnesses on November 1, 2016. On November 3, 2016, Plaintiff moved to certify the class. [D.E. 55]. The Court certified the class over Q Club's objection on December 8, 2016. [D.E. 65]. Plaintiff moved to exclude Q Club's experts, which motion was denied on January 3, 2017. [D.E. 75].

The parties mediated the case on February 8, 2017. [D.E. 76]. The mediation was unsuccessful and the parties began preparing for trial. In his Motion in Limine, Plaintiff identified the following "trial issues":

> Whether Q Club "breached [the Declaration] because it imposed Shared Costs beyond the costs attributable to the Shared Components…."
>
> Whether Q Club "breached [the Declaration] by retroactively assessing and collecting Shared Costs on a multi-year basis."
>
> Whether Q Club "breached [the Declaration] by failing to keep financial records called for under the Declaration."

*See* [D.E. 83].[3] The trial began on May 25, 2017. [D.E. 113]. Plaintiff rested on the fourth day of trial and Q Club moved for judgment as a matter of law. [D.E. 120]. On the fifth day of trial, Q Club rested and the Court entered an order in favor of Plaintiff on the Back Charges Claim. [D.E. 119, 121]. Subsequently, the jury returned a verdict in favor of Q Club. [D.E. 121, 123].

Initially, Plaintiff's expert estimated the class's damages at $12,238,081. [D.E. 55-12 at p. 5]. That figure included $5,000,000 which allegedly had been withdrawn from the Class Members' reserve accounts. *Id.* However, the parties subsequently stipulated that only $1,274,101 of the back charges had been drawn from the reserve accounts. June 1, 2017 Trial Tr.

---

[3] Plaintiff's claim regarding the retroactive assessment of costs not billed in prior years (the "Back Charges Claim") was not alleged in the Complaint even though the Residential Unit Owners were on notice that Q Club intended to recoup costs not charged in prior years. *See* Pl.'s Ex. 32.

at 129. Thus, in closing arguments, Plaintiff's counsel sought damages in the amount of $7,172,307 for purported "overcharges." *Id.* at 127-128.

Post-trial, Plaintiff sought prejudgment interest in the amount of $276,230, [D.E. 146], a request which the Court denied. [D.E. 149]. On June 23, 2017, the Court entered Final Judgment against Q Club in the amount of $1,274,101 on the Back Charges Claim and in favor of Q Club "on all other claims asserted." [D.E. 153]. Q Club now seeks it taxable costs under Fed. R. Civ. P. 54 and 28 U.S.C. § 1920.

## II. LEGAL ARGUMENT

Under Fed. R. Civ. P. 54(d)(1), costs – other than attorneys' fees – are allowed to the prevailing party. The Southern District of Florida's Local Rule 7.3(c) provides that "[a] bill of costs pursuant to 28 U.S.C. § 1920 shall be filed and served within thirty (30) days of entry of final judgment or other appealable order that gives rise to a right to tax costs…."

The costs properly recoverable under 28 U.S.C. § 1920 are as follows:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

"In order to tax costs against the adverse party under Rule 54, a party must first be a 'prevailing party.' The Supreme Court has held that a party is a 'prevailing party' if the party

prevailed on 'any significant issue in the litigation which achieved some of the benefit the parties sought in bringing suit.'" *James v. Wash Depot Holdings, Inc.*, 242 F.R.D. 645 (S.D. Fla. 2007) (quoting *Tex. State Teachers Assn. v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 791 (1989)).

> As one court stated:
>
> Rule 54 does not say what makes a party the "prevailing party." But in general, a prevailing party for purposes of Rule 54(d), is a party in whose favor judgment is rendered. [T]his means the party who won at the trial level, whether or not that party prevailed on all issues, and regardless of the amount of damages awarded. A party need not prevail on all issues in order to qualify as a prevailing party and receive costs under Rule 54.... A party who has obtained some relief usually will be regarded as the prevailing party even though he has not sustained all his claims. In fact, even preliminary relief may serve to make a plaintiff a 'prevailing party' under the statute; the lawsuit need not proceed to completion. All that is required is that the plaintiff obtain the primary relief sought.

*Kearney v. Auto-Owners Ins. Co.*, 2010 WL 3259702, at *4 (M.D. Fla. Aug. 16, 2010).

Here, Q Club is a "prevailing party" entitled to costs under Rule 54. Q Club had a judgment rendered in its favor on the issue of whether it breached the Declaration by charging excess Shared Costs.[4] That issue was the most significant issue in this case and the issue on which Q Club had the potential for the most liability.

Q Club is submitting contemporaneously herewith a completed form AO 133 and documentary evidence in support of its request for costs.  In particular, Q Club incurred the following costs: 1) a filing fee of $400 to remove this case from Florida state court; 2) the amount of $1,800.80, representing costs incurred for transcripts necessarily obtained for use in the case (the deposition transcripts of Janelle Uhl Smith, Sergio Pagliery, Cleveland Andy Williams, and Michele Santoro); 3) the amount of $3,423.68 for trial exhibits; 4) $2,052.90 for photocopies necessarily obtained for use in the case; and, 5) $45.69 for postage, mailing, and long distance calls.  *See* Litow Decl. at Exs. 1, 2.

---

[4] Q Club also prevailed on its earlier motion to dismiss the declaratory relief claim alleged in the Complaint.

"Upon the filing of a timely motion or bill of costs, which sets forth in detail the amounts requested, the opposing party has the burden of showing that the costs requested fall outside the scope of this statute or were otherwise unreasonable." *Obando v. M & E Inv. Props.*, 2012 WL 1933552 (S.D. Fla. Jan. 13, 2012).

WHEREFORE, based on the foregoing, Q Club prays this Court to enter an order taxing costs against Plaintiff and in favor of Q Club in the amount of $7,723.07.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to S.D. Fla. L.R. 7.1(a)(3) and 7.3(c), I hereby certify that undersigned counsel for Defendant conferred with counsel for Plaintiff in a good faith effort to resolve by agreement the issues to be raised in this motion and Plaintiff's counsel objects to the relief sought herein.

Respectfully submitted this 24th day of July, 2017.

/s/ Laurence S. Litow
Laurence S. Litow, Esq.
Florida Bar No. 328758
Howard S. Marks, Esq.
Florida Bar No. 0750085
BURR & FORMAN, LLP
350 East Las Olas Blvd., Suite 1440
Fort Lauderdale, Florida 33301
Telephone:  954-414-6200
Facsimile:  954-414-6201
Email:  lslitow@burr.com
*Counsel for Defendant, Q Club Hotel, LLC*

Ronald Pena, Esq.
Florida Bar No. 135135
Pena, Garcia & Diz, PLLC
2600 S. Douglas Road, Suite 902
Coral Gables, FL 33134
Telephone:  786-361-4950
Email: rpena@pgdlegal.com
*Co-Counsel for Defendant, Q Club Hotel, LLC*

7

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this <u>24th</u> day of July, 2017, I electronically filed the foregoing document with the Clerk of the Court using *CM/ECF*.  I also certify that the foregoing is being served this day upon all counsel of record or *pro se* parties identified in the following Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by *CM/ECF* or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Robert A. Sweetapple, Esq.
Sweetapple, Broeker & Varkas, P.L.
20 S.E. 3rd Street
Boca Raton, FL 33432
pleadings@sweetapplelaw.com
rsweetapple@sweetapplelaw.com
*Counsel for Plaintiff*
**VIA CM/ECF**

Steven R. Jaffe, Esq.
Mark S. Fistos, Esq.
Matthew D. Weissing, Esq.
Farmer, Jaffe, Weissing,
Edwards, Fistos & Lehrman, P.L.
425 North Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
staff.efile@pathtojustice.com
steve@pathtojustice.com
matt@pathtojustice.com
mark@pathtojustice.com
*Co-Counsel for Plaintiff*
**VIA CM/ECF**

*/s/ Laurence S. Litow*
Laurence S. Litow, Esq.
Florida Bar No. 328758

30089957 v1